# Commonwealth *v.* Dehle, Appellant.

*Appeals—Assignments of error—Points—Practice (Superior Court).*

1. An assignment of error to the answer of a point violates rule 15, where the assignment quotes neither the point nor the answer.

2. Assignments of error violate rule 14, if they embrace more than one point, refer to more than one bill of exceptions, and raise more than one distinct question.

*Criminal law—Larceny—False pretenses—Possession—Right to Property—Money.*

3. If by any trick or artifice, the owner of property is induced to part with the possession only, still meaning to retain the right of property, the taking by such means will amount to larceny; but if the owner part with, not only the possession of the goods but the right of property in them also, the offense of the party obtaining them will not be larceny, but the offense of obtaining goods by false pretenses.

4. A conviction for larceny will be sustained, where the evidence shows that the prisoner after meeting by chance the prosecutor, an ignorant foreigner, pretended to find a fifty dollar bill, which was in fact a Confederate bill and worthless, that he offered to divide the find with the prosecutor, and that the prosecutor being ignorant of the character of the bill, gave to the prisoner twenty-five dollars in current money, and took the Confederate bill in exchange for his share.

Argued Dec. 13, 1909. Appeal, No. 123, April T., 1910, by defendant, from judgment of Q. S. Allegheny Co., Sept. T., 1909, No. 344, on verdict of guilty in case of Commonwealth v. Frank Dehle. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Indictment for larceny. Before HAYMAKER, J.

The facts appear by the opinion of the Superior Court.

Verdict of guilty, upon which judgment of sentence was passed.

*Errors assigned* were in the following form:

1. Refusing appellant's request for binding instructions.

2. Rejecting and qualifying appellant's points as follows:

(a) Appellant's second point was:

If the jury believe that the owner intended to part with

the ownership of his property in exchange for the Confederate note, the verdict must be for the defendant.

That request was qualified by the court as follows:

That if at that time he (meaning Franz Henke, the prosecuting witness), knew it was a Confederate note, the defendant would not be guilty of larceny; but if the witness, Henke, parted with his money believing that the Confederate note was good, and the defendant at that time knew it was not good, but simply used that as a trick by which to obtain Henke's money, it would be larceny.

(b) In refusing appellant's third request presented as follows:

If the owner of the property charged to have been stolen parted with the right of property, irrespective of the fraudulent means that may have been used to induce him to do so, the verdict should be for the defendant.

(c) In refusing appellant's fifth request presented as follows:

That under all the evidence of the case, the verdict should be for the defendant.

3. The court erred in its charge as follows:

(a) Larceny is the felonious taking and carrying away of the personal property of another.

(b) If at the time the witness, Henke, parted with his $25.00, he parted with it, knowing that the $50.00 bill that he was getting was a bad $50.00 bill, then the defendant in this case would not be guilty of the crime charged in the indictment. But if he parted with his $25.00 on the belief that the $50.00 bill which the defendant gave him was a good $50.00 bill, and that the money was obtained by the defendant in this case by a trick or device that resulted in the defendant's obtaining the $25.00 from the witness, Henke, then that would be larceny. Unless you believe that the witness, Henke, intended to part with his money, knowing just what he was getting, in which case it would not be larceny.

(c) While the law generally requires the commonwealth to prove that the larceny was the felonious taking and carrying away of the personal property against the consent of the

party losing the property, yet, if the party who lost the property would not have delivered the property but for the representations of the defendant, and he did not deliver the property knowing that the representations were untrue, then the defendant may be guilty of larceny; and that is the question for your determination.

*C. W. Sypniewski,* of *Piekarski & Sypniewski,* for appellant.—If the owner parts with the property, by whatever fraudulent means he was induced to give credit, it is not felony: Com. v. Yerkes, 29 Legal Intel. 60; Com. v. Eichelberger, 119 Pa. 254; Lewer v. Com., 15 S. & R. 93; Com. v. Barrett, 28 Pa. Superior Ct. 112.

*George B. Lewis,* with him *William A. Blakely,* district attorney, for appellee.—Obtaining possession of goods or property animo furandi, by trick, fraud or artifice amounts to larceny: Com. v. Yerkes, 29 Legal Intel. 60; Com. v. Diffenderfer, 8 Lanc. Law Rev. 209; Stinson v. People of the State of Illinois, 43 Ill. 397.

OPINION BY PORTER, J., March 3, 1910:

The first assignment of error violates rule fifteen, of this court, in that the error, if any, was in the answer to a point, while neither the point nor the answer are quoted. The second and third assignments of error violate rule fourteen, for the reason that they each embrace more than one point, refer to more than one bill of exceptions and raise more than one distinct question. The assignments of error might all be quashed and the judgment affirmed upon this ground. We will, however, consider the question raised by the written request of the defendant for binding instructions and the refusal of that point by the court below. The sole contention of the appellant is that the prosecutor parted not only with the possession of but the property in his money, when he handed it to the appellant, and received in return a note for $50.00, purporting to be issued by the Confederate states of America in the year

COMMONWEALTH v. DEHLE, Appellant.    303

1864, and that therefore the offense was not larceny, even if the appellant obtained the money of the prosecutor by means of a trick.

The prosecutor was a newly arrived immigrant who had come to Pittsburg directly from his home in Germany and had to wait at the Union station, Pittsburg, for a short time, for a train which would carry him to his ultimate destination, Swissvale station, near the city. He did not understand the English language and was unfamiliar with our current paper money. He was accosted in his native tongue by the defendant, who having ascertained where he was going told him that he was also going to that place and said they would have a good while to wait, the train did not leave until after eleven. Defendant asked the prosecutor if he had any friends in Pittsburg, and the latter said he had but had not hunted them up yet. The defendant asked prosecutor to go with him to a German saloon and there make inquiry about his friends. They went to a saloon and had a glass of beer and then went out upon the street. The defendant picked up something in the street, or pretended to do so, and then exhibited what seemed to be a roll of money, upon the outside of which was a one dollar bill. The defendant said, "I have found a dollar." He kept on unrolling it and said, "Oh, there is more than a dollar." The defendant then said, "Have you any money about you?" The prosecutor said he had a few dollars. Defendant then said, "We will just divide this; have you $25.00? We will just divide this, but you must not tell anybody about it, not even your friends about it." The prosecutor accepted this proposition and gave $25.00 in bills, current lawful money of the United States, and received from the defendant a piece of paper, which the latter told him was $50.00 in money. The defendant then took the prosecutor into the Union station and telling him to wait there until he came back went out and never returned. The prosecutor subsequently continued his journey to his destination and afterwards was informed by his friends that the paper which he had received from the defendant was not lawful money of the country, but a bill which had been issued by the Confederate states of America,

in 1864, and worthless. The prosecutor a few days later met the defendant in Pittsburg and caused his arrest, and when the officers arrested the defendant they found upon his person two $50.00 Confederate notes, similar to that which he had given the prosecutor, and around each of those notes, in separate rolls, was wrapped a genuine dollar bill, exactly the same character of roll of what all appeared to be money, as that which the defendant had appeared to pick up in the street when in the company of the prosecutor.

The manner in which the case was left to the jury and the verdict upon that submission distinctly determines the following facts: The defendant entered upon the transaction in question with the preconceived design of fraudulently obtaining possession of the money of the prosecutor by a trick, and converting that money to his own use. The prosecutor did not know that the piece of paper which he received from the defendant was a Confederate bill, he believed it to be lawful money of the United States, and the defendant was aware of the ignorance of the prosecutor and of his mistaken belief that he was receiving lawful money. The defendant knew that the paper which he gave to the plaintiff in exchange for his good money was a Confederate bill, was not current money of the country and was worthless. The whole scheme beginning with the pretended finding of the money was a trick devised by the defendant for the purpose of inducing the prosecutor to exchange his money for other money, while the defendant did not intend to give him money in the pretended exchange. The learned counsel for the defendant now contend that the court below should have held, as matter of law, that the taking of the money of the prosecutor by the defendant did not constitute larceny, but false pretenses.

"The correct distinction in cases of this kind seems to be, that if by means of any trick or artifice, the owner of property is induced to part with the possession only, still meaning to retain the right of property, the taking by such means will amount to larceny; but if the owner part with, not only the possession of the goods but the right of property in them also, the offense of the party obtaining them will not be larceny, but

the offense of obtaining goods by false pretenses." This statement of the distinction was quoted with approval from Russell on Crimes in the opinion by Mr. Justice PAXSON in Com. v. Eichleberger, 119 Pa. 254, and it was there said; "The rule itself is distinct and clearly cut; the difficulty consists in its application to the facts of each particular case, varied as they are by the ingenuity of the particular rogue who makes the facts." The rule as thus stated clearly indicates that there may be a parting with the possession which does not involve a passing of the right of property. The intention of the owner in each transaction is necessarily a controlling factor in determining whether the right of property passes with the possession. When an owner is induced by false and fraudulent representations to extend credit to one who purchases, or accepts payment for his goods by a check or bill of exchange which subsequently proves to be of no value, he parts not only with the possession of but the property in his goods, and the taking does not constitute larceny: Lewer v. Com., 15 S. & R. 93. When a purchaser is induced by false and fraudulent representations to pay more for a chattel than it is worth, his intention is to part with his money forever, he takes the chattel as his own to dispose of as he pleases, and this does not constitute larceny of the money: Regina v. Wilson and Martin, 8 Carrington and Payne, 111. With cases such as these there is no difficulty; in Lewer v. Com., the seller had extended credit to his purchaser, and in Regina v. Wilson and Martin, the purchaser had received the identical chattel for which he paid his money. The present case, however, does not fall within either of these classes. There was here no acceptance by the prosecutor of a promise made by the defendant, the contract in which the defendant pretended to join with the prosecutor was to be immediately executed, the money was by each party to be then and there delivered; no credit was extended. This case did not involve the purchase of any chattel or commodity, which might be more or less valuable than it was represented to be; there was here to be a present exchange of money for money. When the prosecutor handed the defendant his lawful money in bills it was with the intention that he should then

and there receive, simultaneously, money in exchange. Had the alleged contract been executed as the prosecutor understood it and as the defendant intended him to understand it, the result would have been not to vest in the prosecutor title to any chattel nor a right of action on any promise of the defendant, but he would have had money and only money. The money which the prosecutor handed over to the defendant was not to pass out of his personal presence until the defendant completed the pretended transaction by delivering the money in exchange. The fact that the defendant opened the negotiation by proposing to give the prosecutor half of the money which he had found does not change the principle involved. The result must be just the same as if the defendant had purchased of the prosecutor goods to the amount of $25.00 and had in pursuance of a preconceived fraudulent design, by some trick, confused the prosecutor in making change, and thus obtained from him an additional $25.00 in money.

When property is obtained with a preconcerted design to steal it, the possession is supposed to continue with the true owner, whatever may be the means or the pretense under which the property is obtained: 1 Hawkin's P. C. 145. When goods or money are delivered with the understanding and intention that the property shall remain in the presence of the owner until the goods are paid for, or other money is immediately returned in exchange for that delivered, the legal possession remains in the owner till the property is altered by the perfection of the contract, which remains inchoate until perfected by the parties: 2 East's P. C. 677. A man may be guilty of larceny of a bill or coin given him in payment of a debt of less amount in expectation of receiving change: Com. v. Lannan, 153 Mass. 287. The devices through which rogues have deceived honest men in making change have been very numerous, and long ago the system came to be designated as "ringing the changes." The rule is now well established, with regard to cheats of this character, that when an owner of money hands it to another in a transaction involving the making of change the possession of and title to the money remains in the true owner until he receives the money to which he is

entitled in return: Verberg v. State, 137 Alabama, **73**; Hildebrand v. People, 56 N. Y. 394; Regina v. McKale, 11 Cox C. C. 32; Com. v. Minnie Barry, 124 Mass. 325. When the consent of the owner of property to its taking is upon a condition to be simultaneously performed, a taking of the property, with fraudulent intent, without performance of the condition, is larceny: Loomis v. People, 67 N. Y. 322; Shipply v. People, 86 N. Y. 375; Regina v. Bramley, 8 Cox C. C. 468; Regina v. Hands and others, 16 Cox C. C. 188. In Queen v. Hollis, L. R. 12 Queen's Bench Division, 25; s. c., 15 Cox C. C. 345, Coleridge, L. C. J., said: "I cannot see if a person goes into a place and fraudulently, by means of a series of tricks, obtains possession of property from another which that other has no intention of parting with, how the offense can fail to be larceny. It is clearly stealing, and the conviction must be affirmed." In that case a barmaid had parted with the possession of money in a transaction involving the making of change, and it was said by the court: "She was induced to do so by a trick, and did not intend to part with it but for an equivalent." The case of Fleming v. State, 136 Ind. 149, is in its facts precisely similar to that with which we are now dealing. The defendant in that case, by a trick, obtained a railroad ticket and $25.00 in lawful money in exchange for a $50.00 Confederate bill, and the court held that he was properly convicted of larceny. The prosecutor in this case did not contract to exchange his money for a worthless piece of paper; he was to have money for money; this the defendant did not give him, did not intend to give him, but fraudulently obtained his money with the intention of converting it to his own use. The suggestion that the prosecutor by accepting the $50.00 Confederate bill in exchange for his money, parted not only with the possession of but property in his money, is conclusively answered by the case of Com. v. Eichleberger, 119 Pa. 254. In that case a bank had held a promissory note for $1,600 and the defendant, who was the maker of the note, went to the bank for the purpose of renewing the obligation; he paid the interest on the renewal, and by a trick obtained possession of the $1,600 note, with the apparent consent of the

bank, and gave in exchange a note with the same indorser for $16.00. It was held that the court could not determine as matter of law that the bank had parted with its right of property, merely because it had accepted one piece of paper for the other, that the paper itself was of no value, it was only valuable for what it represented. The paper which the prosecutor in this case received from the defendant was a worthless piece of paper, it was not money. There was here no real and bona fide contract between the prosecutor and the defendant, the understanding of the parties was not the same, the contract was a mere pretense, and the taking by the defendant, with fraudulent intent, was larceny.

The judgment is affirmed, and it is ordered that the defendant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with that part of the sentence which had not been performed at the time this appeal was made a supersedeas.