Commonwealth *v.* Yocum, Appellant.

Argued June 21, 1967. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Paul M. Chalfin,* with him *Jerold G. Klevit,* and *Lipschitz & Chalfin,* for appellant.

*Joseph M. Smith,* Assistant District Attorney, with him *James D. Crawford* and *Alan J. Davis,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY JACOBS, J., September 15, 1967:

The appellant, Charles R. Yocum, Jr., was tried before the Honorable THEODORE L. REIMEL, sitting without a jury, on an indictment charging him with the crime of fraudulent conversion. He was found guilty, his motions for a new trial and in arrest of judgment were overruled, and he was sentenced. It is from such sentence that the appellant appeals.

Testing the evidence in the light most favorable to the Commonwealth, as we are required to do after a verdict of guilty, the Commonwealth proved the following facts: General Electric Credit Corporation, hereinafter called Credit Corporation, bought commercial paper from the appellant who was a furniture dealer. The paper consisted of installment sales contracts between the appellant and his customers. In all cases the goods were actually sold to the purchaser on the installment contract. Credit Corporation sustained a loss as a result of the purchase of the installment sales contracts during 1961 because it was unable to collect the amounts due from some of the customers. During the time of the appellant's dealings with Credit Corporation one Walter M. Wagner was a credit man work-

ing for Credit Corporation in its Philadelphia office. Appellant complained to Wagner that many of his applications to Credit Corporation to sell his commercial paper were being turned down. Wagner and appellant then entered into an agreement that Wagner would be paid for every application that was approved and purchased by Credit Corporation. After that arrangement Wagner made an effort to handle as many of the appellant's applications as he could. If Wagner could find no credit information concerning the purchaser of the goods, he would call appellant and tell him that the account could not be approved. Appellant would then call back and give Wagner the necessary credit information. The information thus received from the appellant would not be verified by Wagner who would then mark the credit information good, excellent or fair and approve the application. Upon receipt of the commercial paper Credit Corporation would issue its check to appellant. It was shown that in the case of a number of applications where the credit was marked "good" by Wagner that he made such credit rating on the basis of information received from either the appellant or his partner, and that the information received was false.

While the appellant was undoubtedly guilty of a fraud he was not guilty of the crime of fraudulent conversion. Fraudulent conversion is defined by Section 834 of The Penal Code of 1939, 18 P.S. §4834, as follows:

"Whoever, having received or having possession, in any capacity or by any means or manner, of any money or property, of any kind whatsoever, of or belonging to any other person, or which any other person is entitled to receive and have, fraudulently withholds, converts, or applies the same, or any part thereof, or the proceeds or any part of the proceeds, derived from the sale or other disposition thereof, to and for his own

use and benefit, or to and for the use and benefit of any other person, is guilty of a felony. . . ."

The statute defines fraudulent conversion as a crime committed by one who has possession of money or property "belonging to any other person, or which any other person is entitled to receive . . ." and then converts it to his own use. Thus if title in addition to possession is obtained by the defendant his subsequent acts in regard to that property cannot constitute the crime of fraudulent conversion because the property no longer belongs to any other person. As was said in *Commonwealth v. Cavanaugh,* 159 Pa. Superior Ct. 113, 116, 46 A. 2d 579 (1946) : "Of course one may not be convicted of fraudulent conversion if title and ownership of the property is in him." See *Commonwealth v. Overheim,* 106 Pa. Superior Ct. 424, 162 A. 475 (1932).

In *Commonwealth v. Dehle,* 42 Pa. Superior Ct. 300 (1910), we held that the intention of the owner is the controlling factor in determining whether or not title has passed with possession. Here it is clear that Credit Corporation intended to pass title to the money to appellant. No reservation of title to the money by Credit Corporation was shown. What was shown was that Credit Corporation gave up its money in return for installment sales contracts which it took and treated as its own property. There is no evidence to support a finding that Credit Corporation intended to retain any title whatsoever in the money it paid to appellant in exchange for the installment sales contracts. In fact, it appears it gave up all title to the money, but received in return something worth less than it thought it was worth due to the false representations by appellant. In *Commonwealth v. Dehle,* supra, this court said : "When a purchaser is induced by false and fraudulent representations to pay more for a chattel than it is worth, his intention is to part with his money forever, he takes the chattel as his own to dispose of

as he pleases, and this does not constitute larceny of the money." As long ago as 1826 our Supreme Court held that where a man obtained goods in return for a worthless check he did not commit the crime of larceny since the owners intended to pass title as well as possession in the transaction. *Lewer v. Commonwealth,* 15 S. & R. 93 (1827). The same rule applies to this case and there being nothing to show a contrary intent on the part of Credit Corporation, title to the money as well as possession was acquired by appellant and no crime of fraudulent conversion was committed.

This court pointed out in *Commonwealth v. Dehle,* supra, the distinction between larceny, which is a crime against possession as is fraudulent conversion, and false pretenses. We said that if the owner was induced to part with possession only by means of any trick or artifice, still meaning to retain the right of property, such taking is larceny but if he intends to give up his property right in addition to possession then the crime is not larceny but obtaining goods by false pretenses.[1]

The learned court below in finding that Credit Corporation intended to retain title relied on *Commonwealth v. Dehle,* supra, and *Commonwealth v. Eichelberger,* 119 Pa. 254, 13 A. 422 (1888). In the latter case the defendant went into a bank to renew his note in the amount of $1,600 and gave the cashier his renewal note in the amount of $16 and the cashier handed him his original $1,600 note. The court held that the bank did not intend to part with its property in the $1,600 note because the cashier thought he was receiving in exchange a note of similar amount. In *Commonwealth v. Dehle,* supra, the defendant pretended to find a $50 bill in Confederate money and represented

---

[1] Originally the Commonwealth did charge appellant with cheating by false pretenses but prosecution was barred by the statute of limitations, and we need not decide whether or not the crime of false pretenses was committed here.

it to an immigrant as $50 in money. He then offered to split the find with the immigrant and induced the immigrant to give him $25 for his one-half interest in the Confederate $50 bill. The court held that there was no passage of title to the $25 because there was intended to be a present exchange of money for money, which it held to be similar to making change where the title to the money remains in the true owner until he received his change. In both cases a condition was to be simultaneously performed by the defendant. In the one case a note of equal amount was to be given and in the other case lawful money was to be handed over. In neither case was the condition performed and therefore there was no intention to pass title. In the case at bar the immediate conditions upon which transfer of title depended did occur, namely, the delivery of the properly signed obligation of the debtor.

The Commonwealth says that the credit corporation parted with title to the money only because of the fraudulent misrepresentations and therefore title did not pass. We need not pass on the question of whether title passed to the defendant for all purposes for in order to determine criminal liability all that must be shown is the intention of the owner to pass title. *Lewer v. Commonwealth,* supra; *Commonwealth v. Eichelberger,* supra; *Commonwealth v. Dehle,* supra. Neither *Commonwealth v. Doria,* 193 Pa. Superior Ct. 206, 163 A. 2d 918 (1960), nor *Commonwealth v. Miller,* 208 Pa. Superior Ct. 739, 221 A. 2d 864 (1966), cited by the Commonwealth supports its argument. In *Doria* the question of title was never mentioned and in upholding the fraudulent conversion conviction we pointed out that the defendant had obtained "possession" of the money converted. *Miller* was a per curiam order, not an adoption of the lower court's opinion, and is dispositive only of that case.

It was never intended that fraudulent conversion include within its orbit the fraud committed here. As was said by our late President Judge KELLER in *Pearl Assurance Co. v. National Insurance Agency*, 151 Pa. Superior Ct. 146, 152, 30 A. 2d 333 (1943) : "It was designed to cover those border line cases between embezzlement and larceny by bailee, where the faithless agent or custodian sometimes escaped his just deserts (sic) on the ground that his actions were only a breach of trust for which he was not responsible by criminal prosecution, or even by civil action except in assumpsit."

Judgment reversed and appellant discharged.