# Commonwealth *v.* Perrine, Appellant.

*Criminal law—Larceny—Check—Proceeds of check—Insurance solicitor.*

Where an insurance solicitor induces a person to take out insurance policies on his life to the amount of $100,000 on the promise that the first annual premium shall be only $325, instead of $5,283, which was the regular premium, and further induces him to draw a check for the larger amount to the order of cash or bearer on the ground that it would be more regular, although he himself was only to receive $325, and the insured and the solicitor go to the bank together and the proceeds of the check are placed upon the desk in front of the parties, and the solicitor seizes all of the money and leaves the bank before the insured could get it, the solicitor may be convicted of larceny.

Argued March 13, 1911. Appeal, No. 27, Oct. T., 1911, by defendant, from judgment of Q. S. Phila. Co., Dec. T., 1910, No. 48, on verdict of guilty in case of Commonwealth *v.* Hamilton L. Perrine. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Indictment for larceny. Before RALSTON, J.

The facts are stated in the opinion of the Superior Court.

Defendant presented the following points:

6. If the jury find from the evidence that the money alleged to have been taken by the defendant was then and there owing by the prosecutor, Charles J. Matthews, to the Travelers Insurance Company for the premium on the two policies of life insurance each for the sum of $50,000 issued on the life of the said Charles J. Matthews, and the money so taken was applied in payment of said premiums, then their verdict must be "not guilty." *Answer:* The sixth point is declined because there is no evidence of the statement in the next to the last line of the point. [6]

7. If the jury find from the evidence that the money paid by the Central Trust and Savings Company upon the

check of Charles J. Matthews was not the property of the said Charles J. Matthews, but was the property of the Travelers Insurance Company, then the verdict must be "not guilty." *Answer:* The seventh point is declined, there being no evidence of such a condition. [7]

8. If the jury find from the evidence that the money paid by the Central Trust and Savings Company was paid upon the check of the said Charles J. Matthews, drawn and presented for the purpose of paying the premiums due and payable upon two life insurance policies, each for the sum of $50,000, issued by the Travelers Insurance Company on the life of the said Charles J. Matthews, and that the said moneys came into the possession of the defendant either with or without the consent of the said Charles J. Matthews, and that the defendant either paid or caused to be paid to the said Travelers Insurance Company the full premiums thereon to which it was entitled, then their verdict must be "not guilty." *Answer:* The eighth point is declined as not being applicable to the evidence. [8]

9. Under the written application made by the said Charles J. Matthews to the Travelers Insurance Company for $100,000 of life insurance upon his life, for which he agreed to pay an annual premium of $2,641.50 for each $50,000 of insurance, the said Charles J. Matthews upon receipt of the said policies of insurance if written conformably with said application, was legally obliged to pay to the said Travelers Insurance Company or to its duly authorized agent the full amount of the said premium and any conversation had with the defendant or any statement, inducement or promise made to him by the said defendant to return to him any rebate or discount could not affect his liability therefor. *Answer:* The ninth point is declined as being irrelevant to the matter at issue. [9]

10. If the jury find from the evidence that the money paid by the Central Trust and Savings Company upon the check of the said Charles J. Matthews was intended to be used by the said Charles J. Matthews for the purpose of paying to the defendant or to the Travelers Insurance

Company a part of the said insurance premium, the balance to be retained by or returned to him in payment of or to make good the rebate, discount or inducement alleged to have been offered to him by the defendant for applying for and receiving the said policies of insurance, then their verdict must be "not guilty." *Answer:* Refused. [10]

If the jury find that the moneys alleged to have been feloniously taken by the defendant were paid by the Central Trust and Savings Company upon the check of Charles J. Matthews, drawn in full payment of premiums on policies in Travelers Insurance Company and indorsed by the defendant, then the said moneys did not belong to the said Charles J. Matthews, then your verdict must be "not guilty." *Answer:* Refused. [11]

Charles J. Matthews had no right to ask, demand or receive from the defendant or the Travelers Insurance Company the payment of any rebate or discount on the full amount of the premiums called for by the said two policies of $50,000 each. Having received said policies from the defendant and if the said policies were in exact accord with his application therefor, he was legally bound to pay the full premiums called for by them, and if the defendant did not take or receive from him a sum more than sufficient to pay to the Travelers Insurance Company the full premiums and did use the said moneys so alleged to have been taken in payment of said premiums, then the defendant is not guilty of the charge laid in the indictment and the verdict of the jury must be "not guilty." *Answer:* Refused. [12]

Verdict of guilty, upon which the prisoner was sentenced to two years and six months in the county prison. The prisoner appealed.

*Errors assigned* were (6–12) above instructions, quoting them.

*Charles H. Edmunds*, for appellant.—A false repre-

sentaton used to induce a party to pay an honest debt is not within the statute: Com. v. Henry, 22 Pa. 253; Com. v. Thompson, 3 Pa. Law Jur. 250; Com. v. McDuffy, 126 Mass. 467.

*Joseph H. Taulane,* assistant district attorney, with him *Samuel P. Rotan,* district attorney, for appellee.

OPINION BY MORRISON, J., March 11, 1911:

The defendant was indicted and convicted for the larceny of $5,280.30 of the money of C. J. Matthews, the prosecutor. At the trial the defendant offered no testimony in conflict with the testimony of the prosecutor and the other witnesses on the part of the commonwealth. The learned court below instructed the jury, in substance, that if they found the facts as testified to by the prosecutor and the other commonwealth witnesses true beyond a reasonable doubt, and that the prisoner took the money in the way described, then he is guilty of larceny and you should convict him. Under the charge the jury must have found that the transaction was substantially as related by the prosecutor and his witnesses. If the facts had been found by the jury in the form of a special verdict, the evidence would have warranted finding, in substance, as follows:

That Charles J. Matthews, prosecutor, made a written application to the Travelers' Life Insurance Company of Hartford, Connecticut, for a policy on his life in the sum of $100,000. On such a policy the annual premium would have been $5,283. But the defendant induced Matthews to make the application on the promise that the actual cost to him of the insurance would be the sum of $325 for the first annual premium, instead of $5,283; that Matthews underwent the required medical examination and two policies, each in the sum of $50,000, were issued to him by said insurance company on November 28, 1910, and the policies were of the form and character applied for, except that the application was for one policy of $100,000

instead of two policies of $50,000 each. The policies were delivered to Matthews by the defendant on November 30, 1910; that Matthews drew his check, by request of defendant, upon the Central Trust & Savings Company of Philadelphia in the sum of $5,280.30; that this check was so drawn payable to the order of cash or bearer at the request of defendant, he saying, in substance, that while he was only to receive $325 it would be more regular to draw the check for the larger amount; that Matthews, his bookkeeper and the defendant went to the bank and the check was prepared and presented to the paying teller by Matthews and the money placed upon the desk in front of the parties, and that the defendant then took the money before Matthews could or did get it and left the bank and kept the money and no part of it was ever returned to Matthews.

The facts which must have been, in substance, so found by the jury would fully warrant the inference that the whole plan and scheme originated and carried through by the defendant was to induce Matthews to believe that he was only to pay for the first year's premium $325 and that when he drew the $5,280.30 out of the bank he was to hand $325 of it to the defendant and retain the balance to immediately redeposit in the bank. Upon these facts it would therefore appear that the scheme of the defendant was to get possession of the money representing the full amount of the check by fraud and trickery and appropriate the same to his own use, and this is what clearly appears to have been done.

We have no doubt that upon the facts the jury was clearly warranted in finding that the defendant was guilty of the larceny of the money. The check was never delivered to him; nor was the money parted with by the prosecutor willingly or intentionally.

The learned counsel for the defendant has placed in the record thirteen assignments of error and he has made an elaborate argument in support of his contention that the defendant was not guilty of larceny, and further that

the court erred in the manner of the submission of the case to the jury. We do not deem it necessary to discuss the assignments of error separately. In our opinion, the jury was warranted in finding the defendant guilty of larceny and the charge of the court was adequate and we do not find in it nor in the answers to the points reversible error. In the opening of the charge, at request of defendant's counsel, the court instructed the jury as follows:

"Larceny is the wrongful or fraudulent taking and carrying away by any person of the personal goods of another, from any place, with a felonious intent to convert them to his (the taker's) own use and make them his own property, without the consent of the owner.

"To constitute the offence of larceny, there must be a felonious intent, and a felonious intent may be explained to mean that there is no color of right or excuse for the act, and the intent must be to deprive the owner, not temporarily, but permanently of his property.

"To convict one indicted for larceny, it must be established by competent evidence that there was not only a fraudulent taking, but an intention of converting the thing taken to a use other than that of the owner and without his consent.

"Where the taking is in pursuance of an honest claim of title, and when the purpose is not to defraud, but to obtain a just settlement, then such taking is not with a fraudulent intent, and there can be no conviction for larceny."

The court then called the jury's attention carefully and fairly to the testimony and said to the jury, you must decide whether or not this prisoner is guilty upon the evidence which you have heard. The court then said: "That is the evidence in the case, gentlemen, and if that evidence is true, the prisoner is unquestionably guilty of larceny. . . . The check was never given to the prisoner; the money was never given to him. The money was handed out of the paying teller's window to Mr. Matthews, and the prisoner took it and went off with it. What be-

came of it we do not know. It was last seen in the prisoner's possession, and it has never been returned to Mr. Matthews." The court also carefully instructed the jury that the prisoner was entitled to the benefit of any reasonable doubt. "That is to say, if your minds conscientiously hesitate on the testimony to find him guilty you should give him the benefit of that doubt. On the other hand, if you have no reasonable doubt, if you believe this testimony, and find that the prisoner took the money in the way described, then he is guilty of larceny and you should convict him."

It is contended that the court was not warranted in instructing the jury that if they believed the witnesses for the commonwealth then the defendant was guilty of larceny. But we are not convinced that it was not the duty of the court to so instruct the jury. It is perfectly clear under the evidence that the owner of the money drawn out by the check did not intend to part with the possession of the money except a small portion thereof, to wit, $325. In Com. v. Eichelberger, 119 Pa. 254, it is said in the syllabus: "If, by means of any trick or artifice, the owner of property is induced to part with the possession only, still meaning to retain the right of property, the taking by such means will amount to larceny, provided it be done animo furandi." In that case the defendant was indicted for larceny and Mr. Justice PAXSON, in writing the opinion of the Supreme Court, said: "The jury found a special verdict, from which we learn that the Coopersburg Savings Bank held his promissory note, indorsed by John Eichelberger, for the sum of sixteen hundred dollars; that on July 21, 1886, he called at said bank to renew the note; that he paid the discount thereon for another period of ninety days, viz.: $25.07; that he obtained his said note of sixteen hundred dollars by giving the cashier a new note for sixteen dollars with the same indorser; that when the cashier received the note for sixteen dollars, he believed he was getting a note for sixteen hundred dollars, and would not otherwise have surren-

dered the old note; that 'the defendant made and presented the note for sixteen dollars with the deliberate design and intention to defraud said bank by obtaining from it said note for sixteen hundred dollars by giving in its place one for sixteen dollars only and with the design and intention that the officers of the bank should overlook the fact that the note offered was for sixteen dollars only, and that by reason of such oversight and mistake should give up the note for $1,600.00.' The special verdict further sets forth that 'if the facts stated and the acts of the defendant above set forth are sufficient in the opinion of the court to warrant a conviction of the defendant of the crime of larceny, then the jury do say, that he, the defendant, is guilty of larceny in manner and form as he stands indicted. If not sufficient, then the jury find the defendant not guilty.' The learned court below entered a judgment for the defendant upon the facts as found by the jury.

"It is difficult to imagine a more dishonest fraud than the one above stated. . . . In the absence of any decision of this court fully covering the facts of the case it was natural and proper for the learned judge below to give the defendant the benefit of the doubt which he evidently entertained. Were we in doubt we would do likewise, but we are all of opinion that upon the facts found by the jury the offense is larceny.

"The judgment is reversed, and it is ordered that the record be remitted with instructions to the court below to enter judgment for the commonwealth, and to proceed to sentence the defendant according to law."

It is true that in the above case the facts were found by a special verdict. But in the case under consideration the facts were practically undisputed and in our opinion the court was warranted in saying to the jury, in substance, that if you believe the facts as detailed to you the defendant is guilty of larceny. If the trick and fraud in the present case are not as clear and palpable as in the case from which we have been quoting, then we are unable to

see the distinction.   If under the conceded facts in the present case the money was not stolen, we are unable to see how the defendant in the other case was guilty of the larceny of the note.

We think the language used in the charge in the present case sufficiently instructed the jury that the defendant was guilty of larceny, provided he took the money animo furandi.   It is true the court did not use that language but the charge taken as a whole must have impressed the jury with the idea that the defendant should not be convicted unless he took the money by means of trick or artifice and with the intent of wrongfully appropriating it to his own use.   In our opinion, the case was well tried by the learned court below and the defendant was justly convicted of the crime of larceny.

The assignments of error are all dismissed and the judgment is affirmed.