Commonwealth of Pennsylvania *v.* Robert Ferguson, Appellant.

Argued October 2, 1928.

Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.

154

*Joseph R. Dickinson,* and with him *J. Howard Jacobs,* for appellant, cited: Commonwealth v. Saulsbury, 152 Pa. 554; Commonwealth v. Winter, 289 Pa. 284; Commonwealth v. House, 223 Pa. 487.

*E. H. Deysher,* and with him *Oliver M. Wolff,* District Attorney, and *Max Fisher,* for appellee, cited: Commonwealth v. Pugliese, 44 Pa. Superior Ct. 361; Commonwealth v. Rabinowitz, 73 Pa. Superior Ct. 221.

OPINION BY CUNNINGHAM, J., November 21, 1928:

On August 14, 1924, Robert Ferguson, appellant, sold to I. J. K. Light, the prosecutor, twenty shares of preferred and twenty-five shares of common stock of the Womelsdorf, Myerstown and Lititz Transit and Light Co., and obtained from him two promissory notes, each drawn for $1,000, signed by Light and made payable to the order of appellant in sixty and ninety days, respectively, from that date. Payments were made by Light to Ferguson on account of these notes, or renewals thereof, in the aggregate amount of $550. Out of this transaction two criminal prosecutions arose and two indictments were found against appellant, one drawn under section 111 of the Act of March 31, 1860, P. L. 382, and charging that the notes were obtained under certain false pretenses, and the other charging fraudulent conversion under the Act of May 18, 1917, P. L. 241.

The indictment for false pretense was based upon

the allegation that Ferguson falsely and designedly represented to Light that the stock in question was treasury stock of the street railway company and that he was selling it as its fiscal agent; that the company had a large amount of cash on hand which it was holding for the purpose of constructing the road; that the stock was being sold for the purpose of raising the balance necessary for construction; and that the proceeds were to be applied for that purpose; whereas, the truth was that the stock was not treasury stock belonging to the company but was a part of certain shares issued to Ferguson, for whose benefit alone it was being sold, and there was in fact no money in the treasury.

The fraudulent conversion indictment seems to have been drawn upon the theory that the money paid Ferguson on account of the notes was really received by him for the company and fraudulently converted to his own use. The cases were tried together without objection from the defendant. At the conclusion of the evidence the learned trial judge directed a verdict of not guilty upon the indictment charging fraudulent conversion and submitted only the question of costs. Appellant was convicted under the false pretense indictment and has appealed from the sentence imposed after his motions in arrest of judgment and for a new trial had been overruled.

Ten assignments of error were filed but only three are pressed, viz., the first, relating to the admission of certain evidence, and the sixth and seventh, based upon alleged errors in the general charge and the refusal of one of defendant's points. A large part of the evidence for the Commonwealth was flatly contradicted by the defendant and one of his witnesses, but it was clearly sufficient to take the case to the jury, even if the evidence covered by the first assignment be disregarded. The main issue turned upon the

credibility of the opposing witnesses and has been resolved against the defendant by the jury; therefore the judgment should not be disturbed unless some reversible trial error has been committed.

There was evidence on the part of the Commonwealth from which the jury could find these material facts: Appellant was the organizer and promoter of the transit company, incorporated April 26, 1920, with 7,000 shares of eight per cent. cumulative preferred stock of the par value of $100 each and 10,000 shares of common with no par value. It seems that the company desired to acquire the properties, franchises and bond and stock issues of certain other pre-existing companies having some rights along the proposed line. On May 3, 1920, an agreement was entered into between the company and Ferguson providing in substance that all the preferred and common stock should be issued to him for the purpose of acquiring the issues of these other companies and for sale by him, as the company's fiscal agent, for development purposes; provisions were also inserted for the return of stock under certain contingencies, to the treasury. By virtue of this contract and certain corporate resolutions, the 7,000 shares of preferred stock were issued to Ferguson and 6,270 shares were returned by him to the treasury, leaving 730 in his hands. In addition, 134 shares were issued to him for moneys alleged to have been expended by him for the company. Ferguson sold 796 of the 864 shares in his hands but no part of the proceeds went into the treasury of the company. It never received any money from the sale of stock and upon investigation was found to contain only some of the securities of the other companies referred to in the contract. The stock sold by Ferguson to Light was a part of the 864 shares in his hands and the proceeds were applied to his own use.

Light became a director of the transit company in April, 1924. Referring to the purchase of the stock on August 14, 1924, he testified: "...... Mr. Ferguson approached me that I should buy some more stock of this company, that is, the stock of the company, original issue, treasury stock of the company. He told me the company was in good financial condition, that the stock was rapidly being sold, and that it would not be very long before the company would go into construction, that is, that it would start to build the road. He also told me that I wouldn't need to have the money in the company very long, that he was holding quite a block of this stock himself, and as soon as the road was being built or started to build we could dispose of the preferred stock to the people living along the right of way, and we would still retain the common stock which we got as bonus. Therefore, we would soon get our money out of the company again. Q. What, if anything, did he say as to the amount of money on hand? A. On the question directly put to him he made this statement, he says, 'About 70% of the money required to construct the road is available now.'"

The subscription signed by Light was addressed to Ferguson and Company and read in part: "25 common—20 preferred—shares of the Womelsdorf, Myerstown and Lititz Transit ....... The company shall have the right to reject any subscription received or to allot such part of this subscription and purchase as they may deem best." Light further testified that Ferguson told him that the money to be paid for this stock would go into the treasury of the company. The trial judge carefully instructed the jury relative to the distinction to be made between representations as to existing or past facts and those relating to future prospects and amounting only to predictions or promises (Com. v. Forney, 88 Pa. Superior

Ct. 451) and upon the essential elements of the offense. It is not suggested that the charge was inadequate in any particular. The Commonwealth called three other purchasers of stock from Ferguson, several of whom testified that the defendant secured their subscriptions by similar representations. With respect to this testimony, the admission of which is the basis of the first assignment of error, the court said to the jury: "The testimony of Bitler, Weber, and Luck as to defendant's alleged representations made to them has been introduced, not to convict Ferguson of false pretense in sales to them, but in support of what the Commonwealth charges was a general design, purpose, or plan on the part of the defendant tending to establish the fact that he made the representations alleged by the Commonwealth in this case." This evidence tended to show that the sale to Light was merely a part of a system devised by Ferguson for the sale of the retained stock, for his own private benefit, to anyone who could be induced to buy it through his representation that it was treasury stock and that the proceeds would go into the treasury and become available for the legitimate purposes of the company. The form of the subscription signed by one of these witnesses indicated, as did the form signed by Light, that the stock subscribed for was company stock. The principle under which such evidence is admissible is well established: Commonwealth v. Pugliese, 44 Pa. Superior Ct. 361, 365; Commonwealth v. Bell, 88 Pa. Superior Ct. 216, 223; Commonwealth v. Camwell, 89 Pa. Superior Ct. 339, 345. The first assignment is dismissed.

By the sixth and seventh assignments it is charged that the trial judge erred in the portion of the charge relating exclusively to the false pretense indictment "by narrating and commenting upon" the evidence offered and admitted in support of the indictment for

fraudulent conversion; also in refusing one of defendant's points reading—"The defendant in this case is not charged with defrauding the company, and it is immaterial whether or not the defendant paid for the stock which he sold to the prosecutor." We have examined with care the portion of the charge bracketed under this assignment. Its purpose, as explained to the jury, was to give them "a clear picture of the exact situation as established by the evidence on both sides" before referring to the conflicting testimony concerning the making of the alleged representations, etc. It consists of a brief recital of the history of the organization of the company and of appellant's relation to it, a reference to the allotment of stock to him under the contract and to the conceded fact that "during all these years Ferguson sold stock from his own allotment, under that contract, and not one cent went into the treasury." We fail to find any comment therein which was not pertinent to the charge of false pretense. The testimony of the Commonwealth taken as a whole, and particularly in view of the provisions of the contract, would not support a finding that Ferguson received the money paid him by Light for and on behalf of the company within the meaning of the Act of 1917; hence the instruction to acquit on the charge of fraudulent conversion. But the obscurities in the evidence relating to appellant's acts under the alleged authority of the contract and the opposing contentions of the company did not affect the issues arising under the indictment based upon his alleged representations to Light. It was incumbent on the Commonwealth to show, inter alia, that these representations were in fact false, and known to Ferguson to be false; that the stock was not treasury stock; that the company was not in good financial condition; and that there was no intention of using the proceeds of the sale for construction work. One way of doing

this was to show that no part of the proceeds of this sale went into the treasury; that there was no money in the treasury and none had ever gone there from the sale of any of the stock sold by Ferguson. A material inquiry was whether appellant had ever put the money for the stock he sold the prosecutor into the treasury and he cannot justly complain of the refusal of the point as drawn. The sixth and seventh assignments are accordingly overruled.

The judgment is affirmed and the record remitted to the court below and it is ordered that the defendant appear in that court at such time as he may be there called and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed when the appeal in this case was made a supersedeas.