Commonwealth *v.* Stone, Appellant.

Argued June 16, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

Before KREIDER, J.

*G. Thomas Miller,* with him *Bailey and Rupp,* for appellant.

*Martin H. Lock,* Assistant District Attorney, with him *Huette F. Dowling,* District Attorney, for appellee.

OPINION BY ERVIN, J., September 11, 1958:

This is an appeal from a judgment of sentence after a trial by a judge without a jury, on a charge of cheating by fraudulent pretenses.

The evidence must be considered by us in the light most favorable to the Commonwealth: *Com. v. Mitchell,* 181 Pa. Superior Ct. 225, 227, 124 A. 2d 407.

In January 1956 the defendant approached E. F. Garno and represented to him that he had a large order for electric shavers from Shillito's, a leading department store in Cincinnati, Ohio, but that he did not have sufficient money to finance the deal and requested Garno to finance it on a profit splitting basis. These representations were false but were relied upon by Garno, who advanced the sum of $39,450.00 to the defendant. This transaction in January 1956 was the original "Shillito" transaction. On February 28, 1956 the defendant gave Garno a demand note for the principal sum of $42,836.00. This was to cover the $39,-450.00 which Garno had advanced to defendant and also $3,380.00 as Garno's share of the profits from the alleged January deal. On April 5, 1956 defendant again approached Garno for another loan. This time, however, Garno insisted upon some additional assurance that there was an order from Shillito to the defendant for razors. Defendant then gave Garno a paper marked "Inter Office Communication" which purported to contain the details of the Shillito order and defendant endorsed thereon a pledge to Garno of the invoice dated 4/5/57 for the loan. About 30 or 40 days prior thereto defendant had given to Garno a pink slip of paper on

which was printed the name "Shillito's" and which was supposed to be an order from Shillito Department Store to Empire Sales Company, a company controlled by the defendant, to convince Garno that the defendant actually was dealing with Shillito's store in Cincinnati. On April 5, 1956, relying upon defendant's false representations, Garno surrendered to the defendant the latter's note of February 28, 1956 and accepted from him a new demand note for $43,196.00. Presumably a portion of this amount represented principal and a portion profits on the prior Shillito deal or deals. Corporal Smith of the Penna. State Police testified that he showed the pink slip to defendant and that defendant admitted that he had that form made up; that the signature of the alleged purchasing agent had been placed thereon by him (the defendant); and that he had exhibited the alleged order to Garno for the purpose of obtaining money from him. The defendant also admitted that he had no business dealings with Shillito in 1956; that he obtained $39,450.00 from Garno in January of 1956; that 30 or 40 days prior to April 5, 1956 he gave Garno the pink slip of paper purporting to be an order from Shillito and that the name of Shillito was falsely printed thereon; and that on April 5, 1956 he gave Garno the inter-office communication on which the defendant endorsed his pledge.

Section 836 of The Penal Code, 18 PS §4836, provides: "Whoever, by any false pretense, obtains the signature of any person to any written instrument, or obtains from any other person any chattel, money, or valuable security, with intent to cheat and defraud any person of the same, or being an officer, manager, agent, employe of or in any way interested in any person, by false pretense, knowingly and with intent to defraud, procures, obtains, or aids, assists, or abets in obtaining from any other person, any chattels, moneys, or valua-

ble securities for such person of which he is an officer, manager, agent, employe or in which he is in any way interested, is guilty of a felony. . . ."

In order to bring a case within the provisions of the statute, the following elements must co-exist: (1) a false pretense, that is, a false representation of an existing fact; (2) an obtaining of property or something of value thereby; and (3) an intent to defraud. See *Com. v. Gross,* 161 Pa. Superior. Ct. 613, 618, 56 A. 2d 303, and cases cited therein; *Com. v. Thomas,* 166 Pa. Superior Ct. 214, 70 A. 2d 458; *Com. v. Hancock,* 177 Pa. Superior Ct. 585, 112 A. 2d 407.

Defendant argues that on April 5, 1956, the date set forth in the indictment as the date of the crime, he received nothing of value from Garno; that all he obtained was an extension of time for repayment of the pre-existing loan. Even though the defendant received nothing but the extension of time for one day or one hour, we believe this would constitute a thing of value within the meaning of our Penal Code. This contention is properly answered by Judge KREIDER, as follows: "As stated heretofore, on that date, Garno surrendered to Stone, on the strength of the latter's false represen- tation of *another* deal with Shillito's, a judgment note in the amount of $42,836.00. The defendant contends that the only thing he obtained was an extension of time. The fact is, however, that he did receive from Garno a judgment note, a document containing Stone's obligation to Garno on a *separate and distinct transac- tion.* We think that is something of value.

"In addition to the surrender of the note, Stone ob- tained from Garno the right to use Garno's money. We think the gist of the situation was this: Stone falsely represented that he *had a deal* with Shillito's; he said to Garno that he had Garno's money and if permitted

to continue to use this money, he would allow Garno to share the profits."

While some states interpret the language of false pretense statutes narrowly, we believe the proper view is expressed in *Com. v. Schmunk,* 22 Pa. Superior Ct. 348, 355, in the following language: " '. . . the word *"obtain"* as used in the statute means *not so much* a defrauding or depriving another of his property, *as obtaining some benefit to the party making the false pretenses. . . .* The discussion of this question in some of the cases is too refined for application to our plain and practical statute and opens a wide door for designing cheats. We are not unmindful that penal statutes are to be construed strictly. It is said that this rule is almost as old as construction itself, but whenever invoked it comes attended with qualifications and other rules of no less importance. The object in construing penal, as well as other statutes, is to ascertain the legislative intent that constitutes the law. If the language is clear it is conclusive. The words must not be narrowed to the exclusion of what the legislature intended to embrace. It must not be defeated by a forced or overstrict construction.' " (Emphasis added)

Regardless of the April 5, 1956 transaction, the sum of $39,450.00 was advanced by Garno to the defendant in reliance upon his fraudulent representation in January 1956. The fact that the date averred in the indictment is April 5, 1956 is not controlling. The evidence proved a crime either on April 5, 1956 or in January 1956 and the indictment is sufficient to sustain either. The Commonwealth is not bound by the date set forth in the indictment but can show any date within the statutory period and prior to the finding of the indictment except in cases where time is of the essence of the offense: *Com. v. Heintz,* 182 Pa. Superior Ct. 331, 126 A. 2d 498.

It is next contended that there was no false representation of a presently existing fact on April 5, 1956. This may be answered by saying that in January the defendant represented he had orders from Shillito's which he did not have; later on defendant exhibited to Garno a fictitious order from Shillito's; on April 5, 1956 defendant gave to Garno the inter-office communication which purported to contain the details of a separate and later Shillito order; the note given to Garno on April 5, 1956 purported to contain the principal of the original loan, less payments on account, and profits on prior Shillito deals. There were no such deals and therefore the assertion of profits was a misrepresentation of an existing fact.

The defendant also argues that a new trial should be granted because of the contention that the debt has been repaid. Garno denied repayment of these particular sums and this constitutes a question of fact to be determined by the trial judge. Furthermore repayment is not a good defense: *Com. v. Gross,* supra, at page 619.

Some complaint is made that defendant was not permitted to cross-examine the prosecuting witness on other transactions. We do not believe that the trial judge improperly restricted the cross-examination. The scope and latitude of cross-examination are within the sound discretion of the trial court: *Berkley v. City of Jeannette,* 373 Pa. 376, 96 A. 2d 118; *Pantano v. Zamer Motor Sales Co.,* 170 Pa. Superior Ct. 317, 85 A. 2d 681.

In ordering restitution the court below did not give credit for the two repayments of $3,380.00 each, making a total repayment of $6,760.00, admitted by the prosecutor, Garno, to have been received. The portion of the sentence dealing with restitution will be modified to reflect these repayments.

The amount of restitution is reduced from $39,-450.00 to $32,690.00.[1] Judgment of sentence as thus modified is affirmed and it is ordered that appellant appear in the court below at such time as he may there be called and that he be by that court committed until he has complied with his sentence or any part thereof which had not been performed at the time the appeal was made a supersedeas.

---

[1] Total amount advanced in the Shillito deal      $39,450.00
Less payments on account admitted by Garno      6,760.00

Balance due in the Shillito deals      $32,690.00