365 A.2d 1289
COMMONWEALTH of Pennsylvania
v.
Simon FELDMAN, Appellant.

Superior Court of Pennsylvania.
Argued April 13, 1976.
Decided Nov. 22, 1976.

410

William J. LeWinter, Pittsburgh, for appellant.

John J. Hickton, Dist. Atty., Robert L. Eberhardt, Louis R. Paulick, Asst. Dist. Attys., Pittsburgh, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, Judge.

Appellant Simon Feldman was convicted on February 14, 1974 of cheating by false pretenses [1] and of fraudu-

---

1. Act of June 24, 1939, P.L. 872, § 836, *as amended,* 18 P.S. § 4836 (1963) (repealed 1972).

lent conversion of property [2] following a jury trial. This appeal was brought after denial of appellant's motions for a new trial and in arrest of judgment and subsequent to imposition of concurrent sentences of two and one-half to five years imprisonment on the above charges.

Appellant's principal claim is that the evidence presented was not sufficient to establish commission of the crimes of which he was convicted. We agree that the evidence was not sufficient to convict on the above charges and we therefore reverse.

Beginning in December of 1970 appellant was the authorized salvor for the city of Pittsburgh. At the time of his appointment there were approximately 7,000 abandoned vehicles on Pittsburgh streets. As city salvor appellant had the duty of towing to the city auto pound those vehicles which were found on the city streets and designated as abandoned by the Pittsburgh police. Appellant was also responsible for the proper disposition of those vehicles after their arrival at the pound. During the initial period of appellant's tenure as salvor his employees towed as many as 40 to 50 such vehicles each day. The charges against appellant arose out of his disposition of one of those vehicles, a 1968 Volkswagen which was towed to the auto pound on or about March 26, 1971.

The record discloses that in June of 1971 appellant purported to sell the 1968, blue, two-door Volkswagen in question to complainant Robert Kwalwasser. The vehicle was then delivered to a repair facility specified by Kwalwasser for body work, which was completed in July, 1971. The vehicle was subsequently returned to appellant's place of business for transmission repairs and was later stolen therefrom and damaged. Appellant agreed to repair the transmission and the damage which resulted when the auto was stolen. However, appellant never

2. Act of June 24, 1939, P.L. 872, § 834, 18 P.S. § 4834 (1963) (repealed 1972).

completed the promised repairs and a reconstructed title was not obtained as had been promised.[3] In September of 1971, Kwalwasser demanded return of his money. Having received neither the vehicle in a repaired condition nor return of his money, in October of 1971 he charged appellant with the crimes of which appellant was convicted.[4]

The Commonwealth's trial theory on the false pretenses count was that appellant misrepresented to Kwalwasser that he was then able, or that he had a right to sell the car to Kwalwasser when, in fact, he did not have such a right and knew he did not. The Commonwealth also sought to show that appellant obtained $900.00 from Kwalwasser by virtue of that misrepresentation with intent to defraud when the June, 1971 "sale" took place.

The fraudulent conversion charge was based on the alleged facts that, after the car was returned for repairs in July of 1971, appellant fraudulently failed to return it to Kwalwasser.

On appeal to this Court appellant advances various claims of error which, as is recognized by the Commonwealth in its brief, consist of two basic arguments. First, appellant contends that the evidence presented at trial was insufficient to sustain appellant's conviction on charges of false pretenses and fraudulent conversion.

3. At the time Kwalwasser paid for the vehicle he knew that appellant did not have record title to it. Appellant was to obtain a junk certificate and reconstructed title. As will appear, infra, appellant was unable to do so because appropriate forms were not filed with the Bureau of Motor Vehicles at Harrisburg. Record title remained in the person who owned the vehicle at the time the vehicle was towed, as of the date charges were preferred against appellant.

4. Appellant was charged with larceny, receiving stolen goods, cheating by false pretenses and two counts of fraudulent conversion. He was acquitted on the larceny and receiving stolen goods counts, which related to the circumstances surrounding the towing of the vehicle on March 26, 1971. Those charges were made by the Pittsburgh police. A demurrer was granted on one of the fraudulent conversion counts, at the conclusion of the commonwealth's case.

414

Second, appellant claims that the lower court's charge was erroneous in various particulars. In view of our disposition of the first of these claims we need not consider the second argument.

██ We will first consider the fraudulent conversion conviction in light of appellant's claim that the Commonwealth's evidence did not show commission of that crime. The Act of June 24, 1939, P.L. 872, § 834, 18 P.S. § 4834 (1963) (repealed 1972), which controls this case, provided, inter alia, that: "[w]hoever, having received or having possession, . . . by any means or manner, of any . . . property, . . . of or belonging to any other person, or which any other person is entitled to receive and have, fraudulently withholds, converts, or applies the same, or any part thereof, or the proceeds or any part of the proceeds, derived from the sale or other disposition thereof, to and for his own use and benefit, or to and for the use and benefit of any other person, is guilty of a felony . . . ." In order to sustain a conviction under this statute evidence of the owner's demand for and defendant's refusal to redeliver property or of actual misapplication of the property is generally required. *Commonwealth v. Spiegel*, 169 Pa.Super. 252, 82 A.2d 692 (1951). *Accord, Commonwealth v. Stone*, 187 Pa.Super. 225, 144 A.2d 614, *aff'd*, 395 Pa. 584, 150 A.2d 871 (1958). *See Commonwealth v. Schad*, 218 Pa.Super. 359, 280 A.2d 655 (1971); *Commonwealth v. Dunn*, 212 Pa.Super. 384, 243 A.2d 476, *allocatur refused*, 212 Pa.Super. *xxxvi* (1968); *Commonwealth v. Maust*, 205 Pa.Super. 281, 208 A.2d 906, *allocatur refused*, 205 Pa.Super. *xxxvii* (1965); *Commonwealth v. Schuster*, 158 Pa.Super. 164, 44 A.2d 303 (1945). The gist of the offense is not the mere retention of another's property but rather the withholding of another's property with intent to defraud and deprive. *Commonwealth v. Schad*, supra, 218 Pa.Super. at 362, 280 A.2d at 657.

We initially note that we must regard the evidence in the light most favorable to the Commonwealth, giving it the benefit of all reasonable inferences, in deciding whether the Commonwealth showed a fraudulent conversion. *See Commonwealth v. Mitchell*, 234 Pa.Super. 21, 335 A.2d 521 (1975); *Commonwealth v. Minor*, 227 Pa. Super. 343, 322 A.2d 717, *allocatur refused*, 227 Pa.Super. *xxv* (1974). We have reviewed the evidence in that light and we conclude that it was not sufficient.

■ The record is devoid of evidence that appellant converted the vehicle in question to his own use or otherwise disposed of it. To the contrary, the evidence presented showed that the vehicle remained at appellant's garage awaiting repairs.[5] Since there was no evidence that appellant converted the auto to his own or another's use, it was incumbent upon the Commonwealth to show that he fraudulently withheld it. This could have been established by showing that Kwalwasser demanded return of the vehicle and that his demand was refused. *Commonwealth v. Spiegel*, supra. The evidence presented, however, did not establish the existence of a demand for return of the car. Rather, the testimony of the complainant clearly established that the complainant demanded his *money* back, *if* appellant was not going to repair the car.

The record reveals that Kwalwasser made the demand for return of his money during the first week of Septem-

5. The vehicle was still at appellant's garage at the time of trial. However, as is noted supra, Kwalwasser testified, as did appellant, that the auto was stolen from appellant's garage sometime in July and was vandalized. The Commonwealth did not attempt to establish that appellant was involved in the auto's theft as a basis for establishing a conversion. Appellant's uncontradicted testimony was that the auto was stolen by an unknown person or persons, was vandalized and that he found it a short distance from his garage and secured its return shortly after its theft. Subsequently, as previously noted, appellant agreed to repair the damage which resulted from the theft but he had not done so at the time that the demand was made for return of the purchase price of the car, nor had he repaired the transmission.

ber. Kwalwasser testified that after he asked for his money back appellant said that "he wasn't going to give me my money back and that he was going to fix the car." Kwalwasser also testified that "I asked for my money back but not until weeks after that, when he was not getting the car repaired. He said he would fix it."

Appellant was convicted in this case of fraudulent conversion of *property,* a 1968 Volkswagen. There is no evidence of record that appellant applied that property, the auto, to his own use or any other person's use or that he fraudulently withheld the auto from Kwalwasser after demand for its return. No demand for return for the auto [6] was in fact made, but rather qualified demands were made for return of a *repaired* auto or for *money* (if the auto was not to be repaired). The Commonwealth's evidence was therefore insufficient to sup-

---

6. The Commonwealth, relying on *Commonwealth v. Doria,* 193 Pa.Super. 206, 163 A.2d 918, *allocatur refused,* 193 Pa.Super. *xxiv* (1960), argues in its brief that the fraudulent conversion charge is supported by appellant's failure to return the *money* after demand. However, *Doria* is inapposite to the present facts. In *Doria,* the fraudulent conversion occurred in conjunction with cheating by false pretenses when defendant received *possession* of the complainant's *money* and failed to return it on demand. In the instant case the conversion is alleged to have occurred only *after* title to the *money* was given to appellant and after the *auto* was placed back in appellant's *possession.* The property placed in appellant's *possession* here was therefore the auto, not the money. It is apparent that the money had been previously given to appellant with the clear intent of passing title thereto in exchange for delivery of the auto, which was done. The statute involved here does not apply to items transferred to defendant with the purpose and intent of passing title and ownership, *Commonwealth v. Yocum,* 211 Pa.Super. 17, 234 A.2d 43 (1967), *see Pearl Assurance Co. v. National Ins. Agency,* 151 Pa.Super. 146, 30 A.2d 333 (1943), and failure to return the money could therefore not be a fraudulent conversion on these facts. Only failure to return the auto could have been a fraudulent conversion on these facts and there is no evidence that appellant refused to return the auto. Rather, the evidence shows that appellant failed to *repair* the auto.

Moreover, the Commonwealth's argument overlooks the fact that although appellant was originally also charged with fraudulent conversion of the purchase price of the auto, a demurrer was granted at trial as to that charge because the proofs did not support the indictment.

port appellant's conviction for fraudulent conversion of the auto placed in his possession by Kwalwasser and appellant's motion in arrest of judgment should have been granted on the fraudulent conversion charge.

We will next discuss appellant's conviction of cheating by false pretenses. In considering this charge we must also view the evidence in a light most favorable to the Commonwealth. *Commonwealth v. Mitchell,* supra; *Commonwealth v. Minor,* supra.

It is well-settled that to sustain a verdict on an indictment for cheating by false pretenses the Commonwealth must show: (1) misrepresentation of an existing fact; (2) an obtaining of something of value thereby; and, (3) an intent to defraud. *Commonwealth v. Gold,* 220 Pa.Super. 181, 286 A.2d 676 (1971); *Commonwealth v. Wright,* 220 Pa.Super. 12, 275 A.2d 873 (1971); *Commonwealth v. Stone,* 187 Pa.Super. 236, 144 A.2d 610 (1958). It has also been said that the Commonwealth must show reliance on the part of the victim on the false statement or statements of fact, *see Commonwealth v. Rosenhoover,* 236 Pa.Super. 339, 344 A.2d 562 (1975); *Commonwealth v. Bomersbach,* 224 Pa.Super. 40, 302 A.2d 472 (1973), and that the person making the false representation must have knowledge of the falsity of his statement, *Commonwealth v. Gold,* supra; *Commonwealth v. Gross,* 161 Pa.Super. 613, 56 A.2d 303 (1948); *Commonwealth v. Conroy,* 109 Pa.Super. 274, 167 A. 407 (1933); *Commonwealth v. Ferguson,* 95 Pa. Super. 153, *allocatur refused,* 95 Pa.Super. *XXV* (1928); *Commonwealth v. Schmidt,* 95 Pa.Super. 102 (1928). Additionally, a misrepresentation of one's present ability or status may constitute a misrepresentation of an existing fact. *See Commonwealth v. Schmidt,* supra; 16 P.L.E. False Pretenses § 2 at 314 (1959); *Annot.,* 40 A.L.R.2d 971 (1955).

Review of the Commonwealth's evidence in light of the preceding legal principles reveals that the prosecution's theory in this case was that appellant misrepresented his ability or present status in order to obtain $900 from complainant Kwalwasser by falsely asserting that he had a right to sell the 1968 Volkswagen in question to Kwalwasser. The Commonwealth had to prove that appellant made the representation, that it was false, that appellant knew it was false and knew that he had no right to sell the auto, and that appellant obtained money from Kwalwasser thereby. The record clearly supports the conclusion that appellant represented that he had a right to sell the auto when he did not and that he obtained money from Kwalwasser on the strength of the latter's reliance on that statement. However, the record does not clearly reveal that the Commonwealth's proof of appellant's knowledge of the falsity of his representation at the time it was made was sufficient to prove knowledge beyond a reasonable doubt.

The Commonwealth's evidence on the question of intent to defraud was largely devoted to testimony concerning the procedure whereby a salvor could properly place himself in a position to legally sell an auto such as the vehicle involved here. Through this evidence the Commonwealth demonstrated that appellant had not complied with proper procedures and that he did not have a right to sell this auto. It is apparent that the Commonwealth sought to additionally establish thereby that, as a salvor, appellant *should have known* that he had not taken the necessary procedural steps relative to this vehicle and that he therefore could not obtain title to it.

The following was also shown at trial. On August 12, 1970, Cecelia Wilson obtained title to the vehicle in question, a 1968 Volkswagen, serial number 118535178. The Chrysler Credit Corporation had a lien on the vehicle. At some time prior to June 24, 1971 that Volkswagen

was towed into the Pittsburgh auto pound. On or about June 25, 1971, Robert Kwalwasser, President of World Surplus and Salvage Company, Pittsburgh, met appellant at the Pittsburgh auto pound accompanied by other prospective purchasers of auto parts. Kwalwasser and appellant discussed the former's purchase of the vehicle in question. Complainant Kwalwasser testified that the following transpired:

". . . [w]hile I was there, I saw a 1968 Volkswagen, two-door blue sedan, automatic transmission and air conditioning and I asked Mr. Feldman what he would want for that, as I was interested in buying this for my daughter . . . .

"Q What did he say to you?

"A He said that he would sell it to me for $800.

"Q For how much?

"A $900, total of $900 . . . .

"Q What did Mr. Feldman say to you at this time?

"A We, he agreed to sell it to me for the $900.

. . .

"Q Did Mr. Feldman say this was his vehicle?

"A Yes. The lot was—his part of the lot other than the city pound was divided into rows and the cars were marked with dates and certain ones he was allowed to sell he mentioned he was not allowed to sell until a certain time expired.

"Q Did he say he was allowed to sell this 1968 Volkswagen?

"A yes, he did. . . ." Printed Record at 74.

Kwalwasser paid for the vehicle and was given a receipt for $900. Kwalwasser knew that appellant did not then have title and expected that it would take some time for the paperwork to return so that a reconstructed title could be obtained from Harrisburg. As has been noted, supra, the vehicle was then delivered by appellant to a lo-

cal garage for body repairs. After those repairs were completed, Kwalwasser found that the auto's transmission was defective. He thereafter contacted appellant who told him to bring the vehicle to appellant's garage where he would fix it. Kwalwasser did so. The auto was later stolen from in front of appellant's garage and was recovered by appellant in a damaged condition. Appellant then agreed to repair the transmission and the theft damage. The damage was not repaired and title had not been obtained by September of 1971. Kwalwasser demanded return of his money. Appellant replied that he would fix the auto. A civil suit was filed by Kwalwasser to secure return of the money and criminal charges were lodged early in October of 1971.

Meanwhile, the record owner, Cecelia Wilson, stopped making payments to Chrysler Credit Corporation on her auto loan on the vehicle. She also reported the car stolen. Additionally, prior to the date she reported the car stolen to Chrysler Credit Corporation, she was contacted by appellant concerning the vehicle and told him that she wanted no further part of it.[7] Chrysler Credit Corporation contacted appellant in December of 1971 or January of 1972. Appellant offered to purchase the title to the vehicle at that time, Chrysler Credit Corporation having abandoned the vehicle because it did not wish to pay the towing and storage charges. Final negotiations for sale of the title never materialized. Chrysler Credit Corporation obtained title to the auto in December, 1971, based on Mrs. Wilson's default in payments.

The Commonwealth also introduced evidence to show that if appellant had followed proper procedure there would have been Pittsburgh Police records of the March

---

7. Appellant maintained that Mrs. Wilson talked to him after the thirty days had elapsed and that he then felt that she had no further rights in the car. At the time of the trial Mrs. Wilson's whereabouts were not known. During the time period in question Mrs. Wilson was apparently involved in marital difficulties and did not wish to have the car returned, according to appellant.

26, 1971 tow of the car and Motor Vehicle Bureau paperwork evidencing appellant's proper possession as salvor. There were no such records, nor were there records of a request for a junk certificate or for a sale on file, either of which could have led to appellant's ability to sell the auto, absent Chrysler Credit Corporation's objection.[8]

Appellant, on the other hand, maintained that the vehicle was properly towed in by his employees and that he understood that once thirty days had elapsed he could properly sell the auto. His testimony was that he was aware that forms were required but that he was told that after thirty days the autos were "his to sell" and that he did not consider the paperwork to be a requirement of his ability to do so; that he could later obtain a junk certificate to an auto which had been sold. He further indicated that he understood that in June, 1971 the vehicle in question was his to sell because more than thirty days had elapsed from the time that it had arrived on his lot and that city officials had told him to remove the autos as soon as possible after 30 days had passed. The Commonwealth, by contrast, showed that the submission of proper paperwork was a *precondition* to a valid sale.

It is axiomatic that the Commonwealth has the burden of proving every essential element of the crime charged beyond a reasonable doubt, *Commonwealth v. Rose,* 457 Pa. 380, 321 A.2d 880 (1974); *Commonwealth v. Johnston,* 438 Pa. 485, 263 A.2d 376 (1970); *Commonwealth v. Wiggins,* 231 Pa.Super. 71, 328 A.2d 520 (1974), and that the defendant has no duty to produce evidence of his innocence but may stand mute protected by his presumption of innocence and demand that the Commonwealth sustain its burden of proof, *Commonwealth v. Wiggins,* supra. Appellant therefore did not

8. Appellant introduced two junk certificates for Volkswagens which were issued without serial numbers or other descriptions in an attempt to show that these could have related to the vehicle in question.

have to produce evidence showing that he did not know that he could not sell the auto; rather, the Commonwealth had to affirmatively prove that he knew he could not.

To sustain the Commonwealth's burden of proof on the element of intent in this case appellant's knowledge of the falsity of his statements must be inferred from the circumstances; there was no direct proof offered by the Commonwealth to show that appellant knew that he could not sell the vehicle. That no direct evidence of appellant's knowledge of the falsity of his statement was produced is not controlling, however. It is well-settled that circumstantial evidence alone may be sufficient to establish an element of the Commonwealth's burden of proof. *See Commonwealth v. Finnie*, 415 Pa. 166, 202 A.2d 85 (1964); *Commonwealth v. Boden*, 399 Pa. 298, 159 A.2d 894, *cert. denied*, 364 U.S. 846, 81 S.Ct. 89, 5 L.Ed.2d 70 (1960). Intent to defraud, the conscious object of appellant to engage in the conduct here charged, like any other element of the burden of proof, may be inferred from words or conduct or from facts and attendant circumstances which are of such a nature as to prove appellant's guilt beyond a reasonable doubt. *See Commonwealth v. Finnie*, supra; *Commonwealth v. Boden*, supra; *Commonwealth v. Atkins*, 232 Pa.Super. 206, 335 A.2d 375 (1975); *Commonwealth v. White*, 232 Pa.Super. 176, 335 A.2d 436 (1975).

The Commonwealth's evidence of facts and surrounding circumstances clearly showed that appellant should have known the procedure, as a salvor. Having shown that a Motor Vehicle Code provision [9] required a procedure which appellant had not employed, the Commonwealth relied on the maxim that one is presumed to know the law to establish appellant's intent. The logical

9. Act of April 29, 1959, P.L. 58, § 1222, *as amended,* 75 P.S. §§ 1222–1222.6 (1971).

inference presented was that if appellant knew the correct procedure his knowledge of his non-compliance therewith would have caused him to know that his statements with regard to his ability to sell the auto were false. This inference was competent circumstantial evidence of appellant's fraudulent intent. However, standing alone, as it did under the facts of this case, this inference was not sufficient to prove appellant's knowledge of the falsity of his statement beyond a reasonable doubt.

The Commonwealth did not introduce any other attendant facts or circumstances to support the proposition that appellant knew that his statements were false. The Commonwealth here presented evidence of what the law of salvors was and went no further, relying solely upon the presumption that appellant knew the law to establish fraudulent intent. The record discloses that the Commonwealth did not produce evidence of previous similar sales, of appellant's longstanding tenure as a salvor, of conduct or acts showing knowledge of or compliance with the proper procedure in the sale of other vehicles or of any other words, conduct, acts, facts or attendant circumstances which would have supported the one circumstantial proof of intent offered. Although the lower court, in its opinion, held that the testimony overwhelmingly showed that appellant failed to "follow the course of law, even after thorough instructions with regard to his contract with the City in connection with picking up abandoned cars," we do not agree that this fact, which would have been highly supportive circumstantial evidence, was shown. Our review of the record fails to reveal evidence pointing to "thorough instructions" on this point. The Commonwealth did not call city officials as witnesses and did not otherwise seek to directly or indirectly show that appellant knew the procedure.

Furthermore, although the presumption solely relied upon by the Commonwealth is entitled to due weight, we are mindful that "presumptions are not evi-

dence and they are not facts; they are rules of law
. . .," *Hodge v. MeBee., Inc.,* 429 Pa. 585, 590–91,
240 A.2d 818, 821 (1968), "compelling the fact finder to
reach the conclusion in the absence of evidence to the
contrary," *Stine v. Borst,* 205 Pa.Super. 46, 53, 205 A.2d
650, 654 (1964). We deem it significant that the infer-
ence which the Commonwealth sought to establish was
not uncontradicted in this case. Appellant's testimony
was that he did not know that the statements were false.
He claimed that he did not know the salvor's procedures
and that he did not know that he had failed to comply
with the procedures required. Even if we discount ap-
pellant's rebuttal testimony, as we must here, we must
recognize that the Commonwealth's evidence itself con-
tradicted the inference which the Commonwealth sought
to have drawn. The Commonwealth's evidence of appel-
lant's non-compliance with the proper procedure with re-
gard to 197 vehicles found on his lot was a fact which
tended to rebut rather than support the inference that
appellant knew the procedure, that he knew that he had
not complied and that he therefore knew that he was un-
able to sell the auto at the time that he purported to do
so.

The Commonwealth thus failed to show any evidence
of appellant's intent other than the inference created by
the single circumstance that appellant *should* have
known the law. Moreover, this circumstantial evidence
that appellant *must* have known the law was based on a
presumption which was contradicted both by the Com-
monwealth's evidence of appellant's non-compliance with
the act in regard to other vehicles under his control and
by appellant's testimony.

We are compelled on these facts to conclude that even
when viewed in a light most favorable to the Common-
wealth the circumstantial evidence presented here is not
sufficient in volume or quantity, *see Commonwealth v.
Goldberg,* 130 Pa.Super. 252, 196 A. 538 (1938) ; *see also*

*Commonwealth v. Crews,* 436 Pa. 346, 260 A.2d 771 (1970), to overcome the presumption of appellant's innocence and to establish beyond a reasonable doubt that appellant, at the time he made the representations at issue, knew they were false. Appellant's motion in arrest of judgment on the charge of cheating by false pretenses therefore should have been granted below.

Judgments of sentence reversed and the defendant ordered discharged.

VAN der VOORT, J., files a concurring and dissenting opinion.

PRICE, J., dissents.

VAN der VOORT, Judge (concurring and dissenting).

I concur in the reversal of the judgment of sentence for the charge of fraudulent conversion, but I respectfully dissent as to the reversal of the judgment of sentence for cheating by false pretenses. I believe that the circumstances proved by the Commonwealth's evidence were ample to warrant a finding that the pretenses of appellant were false, that they sustain the conviction for the offense of cheating by false pretenses and that we should not permit a business man to bilk one of our citizens of $900.00 and let him off scot free.

I would affirm the judgment of sentence upon the charge of cheating by false pretenses.