**Commonwealth v. Dunmeyer**

*David B. Hartman, Assistant District Attorney,* for Commonwealth.
*Wilbert H. Beachy, III,* for defendant.

COFFROTH, *P.J.*, September 12, 1977— Defendant has filed motions for new trial and arrest of judgment following his jury conviction of theft by deception, based upon his receipt of money from a farm owner for painting a barn, and resulting in defendant's use of the money for other purposes without painting the barn.

The motions assert that: (1) The evidence is insufficient to establish the requisite intent to deceive, and (2) the verdict is against the weight of the evidence.

## FACTS

In July 1975, defendant approached the prosecutor, owner and operator of a farm, and offered to paint his barn; defendant stated he was in the painting business and gave the owner his business card which gave his name, address and telephone number. Defendant lived in the county, was then in the painting business and had truthfully stated his name, address and telephone number. No agreement for painting was then reached. Defendant returned to the farm several times with his proposal, during which period the owner made some inquiries about defendant of others for whom defendant was doing painting. As a result of the inquiries, the owner was willing to make an agreement with defendant for the painting and a written contract was signed on August 8 for a total price of $1,000, $500 down and $500 on completion on or before November 1, 1975. The down money was paid by check when the contract was signed.

The following day, defendant and a helper appeared and worked for four hours preparing the barn windows for painting. After that day, defend-

ant did not return until September 8 when he told the owner he had used the down money and needed more money for paint, whereupon the owner gave him a check for an additional $30. The next day, defendant returned with a can of paint and two ladders and worked about four hours painting the barn. He left his material and ladders in the barn but did not return again. The owner made no effort to telephone defendant, having lost the business card, but he knew defendant's place of residence and, after default became evident, made inquiries about defendant and learned he had moved but did not learn the new address. Apparently, defendant moved to the Village of Gray, about eight miles from the owner's farm.

In September 1976, the owner filed a private criminal complaint against defendant on the present charge which the district attorney approved for prosecution. The owner and defendant next met at the preliminary hearing. At that time, and several times later during the pretrial proceedings, defendant told the owner he wanted to complete the job, and the owner at first accepted such assurances but defendant again failed to perform and the owner then refused to deal any further with defendant.

Defendant testified that he at no time intended not to perform the contract, and still wants to do so, and that the reasons for his default were the loss of his operator's license and inability to obtain sufficient help.

## DISCUSSION

Defendant has been prosecuted for the criminal offense of theft by deception under the Crimes Code of December 6, 1972, P.L. 1482, sec. 3922(a)(1), 18

C.P.S.A. §3922, which defines the offense as follows:

"(a) Offense defined.—A person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally:

"(1) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise;

". . .

"(b) Exception.—The term 'deceive' does not, however, include falsity as to matters having no pecuniary significance, or puffing by statements unlikely to deceive ordinary persons in the group addressed."

Under the Code, the following are the essential elements of the crime of theft by deception:

(1) Intentionally obtaining or withholding property of another,

(2) Which is the result of the actor's deception of the other.

Deception consists of intentionally creating or reinforcing a false impression in the other person as to law, value or fact, including the actor's intention or state of mind.

### Intentionally Obtaining or Withholding Property of Another

In this case, defendant intentionally *obtained* property of another: the $500 down money on August 8, and the $30 advance money on September 8,

which are the only events we are concerned with under the averments of the information.[1]

## Deception

The real issue in this case is whether the evidence is sufficient to show that defendant *deceived* the prosecutor into paying him money on August 8 or September 8, by some false impression of fact.[2] The fact may be expressly stated, or may be implied from language or behavior. See Toll, Pa. Crimes Code Annotated (1974, Lawyers Co-op), §3922, 430 Comment from Model Penal Code. In this case, defendant made no false express statement of fact to obtain the money; on the contrary, his express factual assertions of his name, address, telephone

---

1. The information contains only a single count in statutory language without stating whether the charge of theft by deception relates to the August 8 or September 8 payment, but does state that the offense occurred on or about "August 8 or September 8." Pa.R.Crim.P. 225(b)(3) requires that the information contain "the date when the offense is alleged to have been committed if the precise date is known . . ." Pa.R.Crim.P. 228(b) requires a separate count for each offense charged. The form of the information was not challenged. Accordingly, proof of a theft by deception on or about either of the alleged dates will sustain conviction. Compare Commonwealth v. Deeter, 29 Somerset 238 (1974).

Under those averments, we need not concern ourselves with the more troublesome problem of a deceptive *withholding*. The words "or withholds" in Code section 3922(a)(1), supra, do not appear in the corresponding section 223.3 of the Model Penal Code (Proposed Official Draft) but were added by the Pennsylvania Legislature. See Toll, Pennsylvania Crimes Code Annotated (1974, Lawyers Co-op), §3922, Joint State Government Commission Comment.

2. Under the express provisions of the Crimes Code §3922(a)(1), supra, a false impression of law or value may also suffice, but they are not involved in this case.

number and occupation as painting contractor, were true. The only other inducing assertion of fact, and the one upon which the Commonwealth bases its case, consists of the assertion, implied in defendant's promise to paint the barn, that defendant then intended to perform the promise. Code section 3922, supra, makes it clear that deception may result from a false impression as to one's intention or state of mind, which is a fact. This is a new development in the criminal law of Pennsylvania, introduced by the Crimes Code. Under prior law, the Penal Code of 1939 and its predecessor, the Act of 1860, the corresponding offense of false pretense required a false representation of misstatement of fact other than the mere making of a promise implying an assertion of intention to perform. See 18 P.S. §4836 Appendix; Commonwealth v. Mauk, 79 Pa. Superior Ct. 153, 157 (1922). See also Commonwealth v. Bomersbach, 224 Pa. Superior Ct. 40, 302 A. 2d 472 (1973), and Commonwealth v. Kelinson, 199 Pa. Superior Ct. 135, 184 A. 2d 374 (1962). Now under the Code, if when the promisor makes a promise of future performance he, in fact, has no intention of performing it, and thereby creates a false impression in the mind of the promisee which induces him to part with his down money, there is a theft of the money by deception. If, on the other hand, the promise is honestly made with good intention to perform it, but later the promisor fails to perform because of change in mind or circumstance, there is no crime. Consequently, the mere nonperformance of a promise tells us nothing about whether the promise was false when made, and Code section 3922(a)(1), therefore, specifically provides that "deception as to a person's intention to perform a promise shall not be inferred from the

fact alone that he did not subsequently perform the promise."[3]

The rationale for inferring deception from a false or dishonest promise is also recognized in the law of torts, giving rise to civil liability for deceit, and is well stated in the Comments to Restatement 2d, Torts, §530, as follows: "The state of a man's mind is as much a fact as the state of his digestion." Comment a.

The mere making of a promise carries with it a representation that the maker intends to perform it. "The maker's intention to perform the agreement may be expressed or may be implied from the fact that he has entered into it." Comment b, Restatement 2d, Torts, §530.

While the mere proof of an inducing promise is sufficient evidence of a representation that the maker then intended to perform the promise, the mere nonperformance of the promise is not sufficient evidence that he did not then, in fact, intend to perform.

"The intention of the promisor not to perform an enforceable or unenforceable agreement cannot be established solely by proof of its nonperformance

---

3. Theoretically, the maker of a false or dishonest promise by which he obtains money or property is guilty of theft by deception even if he later changes his mind and fully performs the promise; the strict language of section 3922 does not require that the owner be "deprived" of his money or property or the performance which he bargained for. Nevertheless, such a deprivation seems implied, and as a practical matter nonperformance of the promise is an essential element of criminal liability although its evidentiary significance on the issue of the honesty of the promise is ambivalent.

nor does his failure to perform the agreement throw upon him the burden of showing that his nonperformance was due to reasons which operated after the agreement was entered into. The intention may be shown by any other evidence which sufficiently indicates its existence as, for example, the certainty that he would not be in funds to carry out his promise." Id., Comment d.

It is further stated in comment a, supra, that there is no fraud if the maker of an honest promise "for any reason, good or bad, changes his mind and fails or refuses to carry his expressed intention into effect." Restatement 2d, Torts, §530.

It is evident that in criminal prosecutions for obtaining money or property by the deception of a false promise of future performance which is not performed, the crucial issue is the *time* when the intention not to perform entered the mind of the promisor. If the intention not to perform existed in the promisor's mind when the promise was made and the money or property was obtained, there is a deception and the conduct is criminal; but if the intention not to perform arose later, there was no deception when the money or property was obtained and there is no crime.[4] These two possibilities are mutually exclusive and both can never be true; proof of one negates the other, and proof which equivocates between them proves neither. Evidence pertaining to inconsistent possibilities is equivocal "when we know no reason why one

---

4. The same principles apply in tort law. As to the Pennsylvania law of deceit, see 16 P.L.E. 392, §3; Summary of Pennsylvania Jurisprudence, Torts 1, §329.

rather than the other should occur."[5] So, the Commonwealth has the burden of showing beyond a reasonable doubt that the intention not to perform existed when the promise was made rather than arising afterwards.

Drawing this fine distinction is a good deal to expect of laymen, particularly in a case where the promise was honestly made but its later nonperformance is clearly wrongful and is accompanied by evasive and deceptive conduct designed to escape responsibility for performance. Jurors recognize the wrongfulness of the conduct and tend to convict of crime whether or not the promise was honestly made in the first place, failing to perceive the importance of the distinction between criminal and civil liabilities. Judicial review and supervision of verdicts in such cases is necessary in order to assure that a greater wrong is not inflicted by subjecting a citizen to criminal sanctions for a civil wrong. Unless the prescribed proof requirements in promissory nonperformance cases are strictly maintained, the judiciary will gradually drift into a policy which makes the taking of down money followed by breach of contract a crime, and jails a person for debt where there is no fraud.[6] That consequence to society is worse than the occasional

5. See Cohen and Nagel, Introduction to Logic and Scientific Method (1934, Harcourt Brace), page 159; Sturtz v. Yoder's Milk Transport, Inc., 30 Somerset 1 (1975), Appendix page 43. In order to pass the test of evidentiary sufficiency, the selected evidence favoring the verdict must tip the scales by the required imbalance of probability. See Commonwealth v. Stephens, 27 Somerset 364, 366, paragraph 3 (1972); Commonwealth v. Thompson, 27 Somerset 241, 256 (1971).

6. See Pennsylvania Constitution, Article I, sec. 16; Act of July 12, 1842, P.L. 339, sec. 1, 12 P.S. §257; 16 C.J.S. 1004, §204(1).

escape from punishment of a dishonest contractor for want of sufficient proof of criminality.

In the present case, the foregoing principles must control us. In applying them, we must view the record in the light most favorable to the Commonwealth as verdict winner, and we also recognize that, since defendant made no express statement that he intended not to perform his promises when made (in fact, testified that he did fully intend to perform them), the requisite wrongful intent must be found, if at all, in circumstantial evidence. Mental state, including the intent to defraud or deceive, may always be proven by circumstantial evidence. See Commonwealth v. Feldman, 243 Pa. Superior Ct. 408, 422, 365 A. 2d 1289 (1976). Although the proof of criminal intent must relate to the time of the making of the promises and the obtaining of the money, there may be proof of subsequent circumstances which tend to show defendant's state of mind when the promises were made and the money obtained.

In this case, the only explanation of the reason for defendant's nonperformance comes from his own testimony in which he stated that he always intended to perform the contract but was prevented from doing so because he was unable to obtain enough help and because he lost his driving license and could not get to the job. The guilty verdict indicates that the jury rejected that explanation as false, which they had the right to do; consequently, we must also reject it as false as we view the record in the light most favorable to the Commonwealth. See Commonwealth v. Stephens, 27 Somerset 364 (1972). False testimony may be indicative of guilt, but falsity can be corroborative only and cannot prove guilt; the Commonwealth must still produce other evidence showing guilt beyond a reasonable

doubt: Commonwealth v. Stephens, supra; Commonwealth v. New, 354 Pa. 188, 47 A. 2d 450 (1946); Commonwealth v. Martz, 34 Somerset 25 (1977).

In this case, the Commonwealth contends that the following are sufficient circumstantial evidence of defendant's wrongful intent when he made his promises to perform on August 8 and September 8:

(1) *Nonperformance of the contract:* As previously pointed out, nonperformance is virtually an essential of the criminal cause of action, and is, therefore, a factor important to conviction; but it is valueless as an indicator of whether defendant's intention not to perform existed when he made the promises or arose later. The fact of nonperformance is consistent with a false promise, but is also consistent with an honest promise which was unperformed because of a later change of mind and is, therefore, entirely equivocal. Compare Commonwealth v. Stone, discussed infra.

(2) *Repetition of promises and nonperformance:* Defendant made two promises to the prosecutor to paint his barn, one on August 8 and one on September 8 as alleged in the information. In addition, the testimony shows that he made several additional promises to paint the barn after the criminal complaint was filed against him, and that he failed to perform them all. The repetition of promise and default bears heavily on defendant's credibility, and furnishes strong support for the jury's disbelief of his testimony. But, as stated above, such weakness in defendant's evidence cannot supply the evidence of criminal intent which the Commonwealth has the burden of producing; nor does the repetition tell us, in any way, that the nonper-

formance resulted from a dishonest promise on August 8 or September 8 instead of honest promises followed by a later change of mind. The evidence clearly shows a wrongful nonperformance, even evasion, of a contractual obligation but it tells us nothing on the crucial issue of when that intent to evade was formed. The repeated promises to perform are merely reiterations of defendant's protestations of honest intention, and his repetition of nonperformance is still mere nonperformance in the absence of some other evidence of deceptive intent.

(3) *Defendant's change of residence and telephone number without notice to the prosecutor, and his failure to contact the prosecutor:* This evidence strongly shows an intention on the part of defendant to evade the prosecutor and the contractual obligation, and indeed to deprive the prosecutor of the benefit and value of the money received. But it gives no material aid in resolving the vital question of when that intention arose. Defendant's change of residence and telephone number occurred long after August 8 and September 8 when the promises and payments of money were made, and there is no evidence to show that defendant planned the evasion from the beginning.

(4) *Defendant's use of the down money for other purposes:* Defendant testified that on September 8 he told the prosecutor that he had used the down money for other purposes and needed additional money to purchase material for the prosecutor's barn. When the contract was made on August 8, no requirement was imposed upon defendant that he use the down money for purposes of the contract, nor did he make any promise that he would do so.

Defendant was thus in the position of any contractor who receives down money without restriction upon its use. It is the contractor's money without strings which he is free to use in his business, on other jobs if he wishes, and defendant created no false impression to the contrary. The owner was apparently content to rely merely on defendant's promise to complete the work by November 1 and to accept the risk that defendant would then be able to do so. As to the $30 paid to defendant on September 8 for materials, the evidence is sufficient to warrant the conclusion that defendant then not only repeated the promise to comply with the contract, creating the impression that he honestly intended to do so, but also created the impression that the $30 would be used to buy materials. But there is no evidence that these impressions were false; on the contrary, the evidence is that defendant did buy paint and materials and appeared at the farm the next day with them. As to the honesty of the repeated promise, there is still no reason to infer dishonesty in September from the later breach in October as opposed to a change of mind.[6a]

Some of these principles are illustrated in Commonwealth v. Stone, 70 D. & C. 2d 395 (1975), where defendant was found guilty of theft by deception, which warrants brief discussion. In that case, defendant made an agreement on Saturday to begin painting the owner's house on the following Monday morning, and was given $250 to purchase materials. On Monday morning, defendant did not appear as agreed, but called in the afternoon to say

6a. Obtaining property on an agreement to use the property in a specified way or for a specified purpose, is a separate theft offense under Crimes Code section 3927. See Commonwealth v. Bhojwani, 242 Pa. Superior Ct. 406, 364 A. 2d 335 (1976).

that he could not begin work that day and was then told by the owner that his services were no longer wanted. Then, or later the same day, defendant told the owner that he had spent more money on materials than the owners had paid him, whereupon the owners agreed to accept the materials and pay defendant the excess. Defendant neither agreed to this, nor did he deliver the materials. The court denied defendant's post trial motions, saying at 401:

"Here the evidence is most strong that defendant, once having received the $250 deposit, never intended to take any further action towards fulfilling his end of the bargain. This subsequent failure either to perform work on the house or to deliver to the Codys the materials he allegedly purchased, when coupled with his lack of response to Mrs. Cody's offer to reimburse him for his alleged excess expenditure, easily lead to a conclusion that the Cody's money was obtained by defendant as a scheme to defraud.

"If defendant had, in fact, spent $70 more for supplies than the Cody's gave him, he certainly would have been expected, under any reasonable man's standard, to have followed through in accepting Mrs. Cody's proposal. From his failure to do so we can only infer that he either never made the expenditure which he claims or that he utilized elsewhere the materials purchased with no intention of using them to fulfill his obligation to the Codys. His overall conduct was consistent with an intention not to perform the promised painting."[7]

7. For reasons already explained, we do not concur with the court in Stone in giving significance to the fact that the evidence is "consistent with an intention not to perform the promised painting."

One of the chief elements in Stone is that the agreement provided for a starting date only two days after the contract was made; that circumstance, together with the other circumstances stressed by the court, evidenced a willful nonperformance only two days after the promise was made which might justify the inference that breach was likely in defendant's mind also on Saturday and that there was no mere change of mind in so short a time. In the instant case, prompt performance was not required; the contract contained no starting date, was made on August 8 and specified only a completion date of November 1. Painting a barn would require at most a few weeks, but defendant was given almost three months within which to do the job, leaving largely to him when he should start. It could not be determined until the later part of October whether the contract would be performed according to its terms, long after August 8 and September 8 when the money was paid. Therefore, the timing of the nonperformance in relation to the making of the promise furnishes no basis for concluding that the intentional breach which became evident in October or November was also in defendant's mind in August and September when the payments were made. Another substantial difference between Stone and the present case is that the down money in Stone was given for the specific purpose of buying materials whereas no such restriction was imposed here on August 8.

The Restatement 2d, Torts, §530, Comment d, supra, suggests that the wrongful intention may appear from proof that defendant, when he made his promises, knew with "certainty that he would not be in funds to carry out his promise." But we have no such evidence here. The fact that a contractor may be without funds in September to paint

a barn in October presents no known certainty that he will be without funds in October.

The Commonwealth relies on Commonwealth v. Gallo, 236 Pa. Superior Ct. 557, 345 A. 2d 747 (1975), as supporting its contentions, but analysis of that case shows an entirely different situation, and it is not helpful here for several reasons:

(1) In Gallo, defendant made false representations of fact in order to induce the contract, stating falsely that he was an account executive for a national publisher. No affirmative misrepresentation of fact was made here.

(2) The 4-3 decision of the Superior Court in Gallo has, since argument of this case, been reversed by the Supreme Court in Commonwealth v. Gallo, 473 Pa. 186, 373 A. 2d 1109 (1977). The Supreme Court disregarded the misrepresentation above mentioned by considering it as having no pecuniary significance under Code section 3922(b), supra. The Supreme Court also remarked that the fact that defendant had initially given his correct address and telephone number tended to prove a lack of intention to deceive, even though defendant did not later answer the calls and letters of the party with whom he contracted. The Supreme Court evidences a determination in Gallo not to allow criminal enforcement of contracts without proof that defendant "never intended to perform his part of the contract." Commonwealth v. Gallo, supra, at page 1111.

## CONCLUSION

Careful analysis of the evidence and of the Commonwealth's contentions in this case shows that the circumstances here present do not, either separately or in combination, justify the conclusion that

defendant's intention to violate his promises, made to the prosecutor on August 8 and September 8, existed when the promises were made rather than thereafter.

We are not entirely pleased with the result we must reach in this case. We suspect that defendant may not have had an honest intent to perform his promises when he made them, but we cannot follow a suspicion. Nothing short of sound evidence beyond a reasonable doubt will suffice to support a conviction of crime, and the evidence is simply not here. Moreover, we are sympathetic with the prosecutor, whom defendant has treated unjustly; of course, the prosecutor still retains and may pursue his civil remedy against defendant for money damages for breach of contract. In addition, it is unfortunate if the prosecutor was led to believe that he was all along pursuing a legally viable course of action by pressing criminal prosecution instead of a civil suit. He would undoubtedly have been better served had he made a stricter contract with defendant and not have given him so much discretion as to the use of the down money and time of performance, and if he had not placed so much confidence in defendant. The court lacks the power under the evidence in this case to use the criminal law to remedy that misplaced confidence.

The Commonwealth must take into account in prosecutions for theft by deception the heavy burden which rests upon it to prove subjective intent to deceive as of a particular time. That burden cannot be mitigated by reason of the difficulty of carrying it. See Commonwealth v. Horton, 465 Pa. 213, 223, 348 A. 2d 728 (1975). As the burden of proof becomes more difficult to bear, the risk of the guilty going free rises, but the risk that the innocent will

be convicted is reduced; our society has always considered that reducing the latter risk justifies increasing the former. See Patterson v. New York, 53 L.Ed. 2d 281, 291 (1977). Compare Commonwealth v. Cohn, 26 Somerset 320, 334 (1970), and In Re: Winship, 25 L.Ed. 2d 358, 363-64 (1970).

## ORDER

Now, September 12, 1977, defendant's motion for new trial is denied; the motion in arrest of judgment is granted and defendant is discharged as prescribed by the statute: 19 P.S. 871.